Joshua H. Watson, California SBN 238058
Email: jwatson@justice4you.com
**CLAYEO C. ARNOLD, A
PROFESSIONAL LAW
CORPORATION**
865 Howe Avenue
Sacramento, California 95825
916-777-7777 Telephone
916-924-1829 Facsimile

Kevin S. Hannon (Pro Hac Vice to be filed)
Colo. Bar No. 16015
Email: khannon@hannonlaw.com
**THE HANNON LAW FIRM, LLC**.
1641 Downing Street
Denver, CO  80218
303-861-8800 Telephone
303-861-8855 Facsimile

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Debra Kooser and Margaret Frankiewicz on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>Facebook, Inc., Cambridge Analytica, SCL Group, Limited, and Global Science Research LTD,<br><br>                              Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Debra Kooser and Margaret Frankiewicz , on behalf of themselves and all others similarly situated, allege the following against Defendants Facebook, Inc. ("Facebook"), Cambridge Analytica ("CA"), SCL Group, Limited ("SCL"), and Global Science Research ("GSR") ("Defendants"):

## SUMMARY OF THE CASE

1.      Facebook operates a social networking website through which owners of Facebook accounts can communicate with family, friends, and coworkers that they choose and can access services promoted and allowed by Facebook.  Facebook develops technologies that facilitate the sharing of information, photographs, website links, and videos

and allows others to promote services on Facebook with restrictions that Facebook determines.  Facebook users have the ability to share and restrict information based on specific criteria that Facebook determines.  By the end of 2017, Facebook had more than 2.2 billion active users.

2.     Defendant Cambridge Analytica is a privately held company that combines data mining and data analysis with strategic communication for use in the electoral process and perhaps other uses.  Defendant SCL Group created and operated Cambridge Analytica during the time it committed the acts alleged herein, and/or directly committed those acts. Defendant Cambridge Analytica used software developed by Defendant Global Science Research to conduct the unauthorized mining of the personal information of Plaintiffs and the Class Members.

3.     As part of the sign up process and while interacting through Facebook, Facebook users create profiles containing significant amounts of personal information, including their name, birthdate, hometown, address, location, interests, relationships, email address, photos, and videos, among other personal data, referred to herein as "Personal Information."

4.     Facebook's Terms of Service state properly that the Facebook user is the owner of all of their data.

5.     This case involves the absolute disregard with which Defendants have chosen to access, use, and manipulate Plaintiffs' and Class Members' Personal Information and allow such access, use, and manipulation.  Facebook allowed CA to use the Facebook platform to collect Facebook users' Personal Information, which Personal Information was owned by users.  While this information was represented by Facebook to be protected as private, and used for only expressly disclosed and limited purposes, Defendants SCA, SCL and GSR, without authorization, or by exceeding whatever limited authorization they or their agents received from the Facebook user, improperly collected the Personal Information of Plaintiffs and Class Members, nearly 50 million Facebook users, again for their own

financial benefit.  Facebook knew this improper data aggregation was occurring and failed to stop it, and/or negligently and recklessly chose not to monitor the use of its platform to mine users' Personal Information.  Plaintiffs brings this suit to protect their privacy interests and those of the Class Members.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper under 28 U.S.C. § 1391(c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Facebook to permit the information aggregation and collection of the information by Defendants CA, SCL and GSR.

## PARTIES

**A.    Plaintiffs and Class Representatives**

8.    Plaintiff Margaret Frankiewicz is a citizen and resident of Twin Falls, Idaho. Plaintiff Frankiewicz has owned a Facebook account for approximately ten years.

9.    Plaintiff Debra Kooser is a citizen and resident of Arvada, Colorado.  Plaintiff Kooser has owned a Facebook account for approximately seven years.

**B.    Defendants**

10.    Facebook, Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Facebook's securities trade on the NASDAQ under the ticker symbol "FB."

11.     Cambridge Analytica ("CA") is a privately held Delaware Corporation that combines data mining and data analysis with strategic communication for the electoral process.  CA was created in 2013 by its British parent company SCL Group, Limited and incorporated in Delaware on December 31, 2013.  Rebekah Mercer sits on CA's Board of Directors.[1]  CA co-founder Christopher Wylie stated the company's mission as: "… to fight a culture war in America."[2]  In 2016, CA worked for the Donald Trump presidential campaign among other campaigns.[3]  An interview with CA's CEO (Alexander Nix) confirms that the Trump campaign paid for CA's services.[4]

12.     Defendant SCL (Strategic Communications Laboratories) Group, Limited ("SCL") is a private behavioral research company organized, located and operated in the United Kingdom that created, owns and operates Defendant Cambridge Analytica for profit.  On information and belief, SCL has done significant business in California.

13.     Defendant Global Science Research LTD ("GSR") is a company organized, located and operated in the United Kingdom which mined and sold private information of Facebook users for profit, including to Defendants SCL and CA.

**FACTUAL BACKGROUND**

14.     On March 17, 2018, both the *New York Times* and *The Guardian* reported on CA's use of Personal Information obtained from Facebook without permission, and under the pretext of claiming to be collecting and using it for academic purposes.  The reports revealed that Cambridge Analytica, a firm brought on by presidential campaigns to target voters online, used the data of 50 million people obtained from Facebook without proper disclosures or permission.  The report further stated, in part:

[1] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.  Last accessed March 31, 2018.
[2] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.  Last accessed March 31, 2018.
[3] https://en.wikipedia.org/wiki/Cambridge_Analytica.  Last accessed March 31, 2018.
[4] https://www.forbes.com/sites/parmyolson/2018/03/20/cambridge-analytica-suspends-ceo-alexander-nix-over-facebook-scandal/#27d19db87e71  Last accessed March 31, 2018.

3

**[T]he firm harvested private information from the Facebook profiles of more than 50 million users without their permission**, according to former Cambridge employees, associates and documents, making it one of the largest data leaks in the social network's history. The breach allowed the company to exploit the private social media activity of a huge swath of the American electorate, developing techniques that underpinned its work on President Trump's campaign in 2016.

*** 

**But the full scale of the data leak involving Americans has not been previously disclosed — and Facebook, until now, has not acknowledged it.** Interviews with a half-dozen former employees and contractors, and a review of the firm's emails and documents, have revealed that Cambridge not only relied on the private Facebook data but still possesses most or all of the trove.

(emphases added.).

15.     Cambridge Analytica obtained Plaintiffs' and Class Members' Personal Information by posting a survey app on Facebook called "thisisyourdigitallife" in 2014. Represented on Facebook as a "research app used by psychologists" designed by a Cambridge academic, CA represented that the app would help users better understand their own personalities.

16.     Upon information and belief, Cambridge Analytica's parent, SCL, was first introduced to the concept of using social media data to model human personality traits in early 2014 by an Aleksandr Kogan, a lecturer at Cambridge University's renowned psychology department.

17.     Upon information and belief, Defendant SCL, with the knowledge and approval of CA, entered into a written agreement with GSR providing that GSR would mine and process Facebook data so that SCL and its entity CA could analyze it for use in targeting Facebook users in the Presidential and other political races in the United States, and do so for their own profit.  Upon information and belief, GSR was paid for these services by SCL and/or CA, who were in turn paid through electronic or wire transfers by political campaigns in the United States.

Class Action Complaint

18.     In June 2014, Dr. Kogan built his own app and began harvesting data for Cambridge Analytica.  Defendants CA and/or SCL covered the costs — more than $800,000 — and allowed him to keep a copy for his own research, according to company emails and financial records.  Kogan's work on behalf of SCL and CA involved collecting data from survey participants' networks of Facebook friends, individuals who had not themselves consented to give their data to Global Science Research and were not aware that they were the objects of Kogan's political research.[5]

19.     The data was collected through an app called "thisisyourdigitallife," built by Kogan, separately from his work at Cambridge University.  Through Kogan's U.K. company Global Science Research (GSR), in collaboration with Cambridge Analytica, hundreds of thousands of users were paid to take the "thisisyourdigitallife" personality test and agreed to have their data collected for academic use.  GSR eventually gave Cambridge Analytica a list of millions of people in the U.S., with their names, locations, genders, ages and predicted test scores.

20.     Upon information and belief, contracts won by Cambridge Analytica were serviced by London-based SCL and overseen by Mr. Nix, a British citizen who held dual appointments at Cambridge Analytica and SCL.

21.     Upon information and belief Defendants SCL and/or CA wrote the terms of service for the thisisyourdigitallife app.

22.     Relying on CA's representations, approximately 270,000 people downloaded the thisisyourdigitallife app, giving Cambridge Analytica access to their data and that of all their Facebook friends, likely more than 50 million other people, without obtaining permission to access the full extent of the data accessed.[6]

---

[5] See https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data.  Last accessed March 31, 2018.
[6] See https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analytica-alexander-nix-facebook-trump/#674008da535f.  Last accessed March 31, 2018.

23.     A former contractor with Cambridge Analytica, Christopher Wylie, revealed how the data mining worked: "With their profiles, likes, even private messages, [Cambridge Analytica] could build a personality profile on each person and know how best to target them with messages."[7]

24.     Mr. Wylie stated that he had receipts, invoices, emails, legal letters and records that "showed how, between June and August 2014, the profiles of more than 50 million Facebook users had been harvested."[8]  These profiles "contained enough information, including places of residence, that [CA] could match users to other records and build psychographic profiles."[9]

25.     Cambridge Analytica used the data collected from Plaintiffs' and Class Members' Facebook accounts to build a massive targeted marketing database based on each user's individual likes and interests.  Its misrepresented research provided a treasure trove of Facebook "likes", allowing it to match individuals' traits with existing voter datasets, such as who owned a gun.   These profiles "contained enough information, including places of residence, that Cambridge Analytica could match users to other records and build psychographic profiles."[8]

26.     In effect, CA was mounting a campaign of psychological warfare on millions of hapless victims, without their knowledge or consent.  Indeed, of the 50 million Facebook users victimized by this scheme, "only about 270,000 users – those who had participated in the [thisisyourdigitallife] survey"[10] – had even given limited consent to allowing their data to be used, and then only for research purposes, and without any authorization to having their data used to promote CA's political targeting business, let alone access the data of their

---

[7] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.  Last accessed March 31, 2018.

[8] https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.  Last accessed March 31, 2018

[9] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.  Last accessed March 31, 2018.

[10] *Id.*

Class Action Complaint

Facebook friends.  Mr. Wylie stated that "… the Facebook data … was 'the saving grace' that let his team deliver the models it had promised."[11]

27.    Using this personality profiling methodology, the company offered its profiling system to dozens of political campaigns so that potential voters could be targeted with precision.  For example, Ted Cruz's presidential campaign paid at least $750,000 to Cambridge Analytica for its behavioral micro-targeting research.  The company has also received millions of dollars from political Super PACS.[9]

28.    Facebook has joint responsibility for the theft of the data of the Class Members.

29.    Sandy Parakilas, a "former Facebook platforms operations manager for policing data breaches by third party software developers between 2011 and 2012," stated that as many as hundreds of millions of Facebook users are likely to have had their private information harvested by companies that exploited the same terms as the firm that collected data and passed it on to Cambridge Analytica.[12]

30.    Parakilas stated that he warned senior executives at the company that its lax approach to data protection risked a major breach: "[Parakila's] concerns were that all of the data that left Facebook servers to developers could not be monitored by Facebook, so [Facebook] had no idea what developers were doing with the data" and that the company did not use enforcement mechanisms, including audits of external developers, to ensure data was not being misused.[13]

31.    Facebook's "trust model" was rife with security vulnerabilities and a near total abnegation of its responsibility to audit its own rules limiting use of Facebook data owned by Facebook users by third parties. Or, in Parakilas' own words, "[Facebook] felt that it was better not to know."[14]

---

[11] *Id.*

[12] https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas.  Last accessed March 31, 2018.

[13] *Id.*

[14] *Id.*

Class Action Complaint

32.    Facebook's representation to Plaintiffs and Class Members that "Protecting people's information is at the heart of everything we do"[15] was in fact a misrepresentation, one which Plaintiffs and Class Members relied upon.  In fact, Facebook had known about this security breach for two years, but did little or nothing to protect its users.[16]

33.    Facebook represents to its users that: "you have control over who sees what you share on Facebook."[17]  Facebook represents to its users that: "We have top-rate security measures in place to help protect you and your data when you use Facebook."[18]  Facebook represents to its users that: "Your activity (ex: posting a status or sending a message) is encrypted, which means it's turned into code so people can't access it without your permission."[19]  Facebook represents to its users that: "When it comes to your personal information, we don't share it without your permission (unless required by law)."[20] Facebook represents to its users that: "Facebook gives people control over what they share, who they share it with, the content they see and experience, and who can contact them."[21]

34.    At all relevant times, Facebook has maintained a Data Use Policy on its website.  At all relevant times, the Data Use Policy advised Facebook users, in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways. While you are allowing us to use the information we receive about you, you always own all of your information. ***Your trust is important to us, which is why we don't share information we receive about you with others unless***

---

[15] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.  Last accessed March 31, 2018.
[16] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html; https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas.  Last accessed March 31, 2018.
[17] https://www.facebook.com/about/basics.  Last accessed March 31, 2018.
[18] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected.  Last accessed March 31, 2018.
[19] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected#2.  Last accessed March 31, 2018.
[20] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected#4.  Last accessed March 31, 2018.
[21] https://www.facebook.com/safety.  Last accessed March 31, 2018.

8

*we have:*
- ***received your permission***
- ***given you notice***, such as by telling you about it in this policy; or
- removed your name and any other personally identifying information from it.

(emphases added).[22]

35.   Facebook users, including Plaintiffs and the Class Members reasonably relied on Facebook's representations for the security of their Personal Information in using Facebook and posting Personal Information on Facebook.

36.   Facebook's allowing Cambridge Analytica to access and misuse Facebook Users' Personal Information has violated the privacy of millions of people in every state. The data owned by Plaintiffs and the Class Members has been stolen by CA, SCL and GSR with the agreement of Facebook for Defendants' financial benefit.  Plaintiffs and Class Members suffered annoyance and interference in their use of their Facebook accounts by the manipulation of the information presented to them on their pages by CA, SCL and GSR with agreement of Facebook.  Plaintiffs and Class Members suffered annoyance and interference in their use of their Facebook accounts by the use of their Facebook Friends' personal information for the benefit of Defendants, and in their loss of privacy.  The privacy and personal, sensitive information of Plaintiffs and the Class Members is now at high risk for identity theft and compromise, and will continue to be at risk as a direct result of the acts of Defendants.

37.   Upon information and belief, the stolen Personal Information is likely to remain in the possession of Defendants CA, SCL, or GSR and has been released to others.[23] The Cambridge Analytica dataset suggests copies of the Facebook-derived data still exists.[24] The data is also believed to have been passed around using generic, non-corporate email systems, outside of the servers of Cambridge Analytica, and linked company SCL.[25]

---

[22] https://www.facebook.com/full_data_use_policy.  Last accessed March 31, 2018.
[23]https://www.channel4.com/news/revealed-cambridge-analytica-data-on-thousands-of-facebook-users-still-not-deleted.  Last accessed on  April 2, 2018.
[24] *Id.*
[25] https://www.channel4.com/news/revealed-cambridge-analytica-data-on-thousands-of-facebook-users-still-not-deleted.  Last accessed April 2, 2018.

Class Action Complaint

38.     Plaintiff Debra Kooser owned and was a user of her Facebook account during the 2014 midterm and 2016 presidential campaign season.  During these campaign seasons, Plaintiff Kooser began experienced political posts and advertisements Plaintiff had not experienced previously.  On or about March 24, 2018, Plaintiff Kooser was visited at her home by a news reporter from London TV station Channel 4 News.  Channel 4 News presented Plaintiff Kooser with the dossier on her developed by Cambridge Analytica represented to be from 2014.[26]  The dossier contained multiple points of information about her that were accurate.  Separately, the dossier had content concerning political views, a personality profile, and personality characteristics.[27]  Plaintiff did not consent to the access of her Personal Information by Defendants CA, SCL and GSR, and did not consent to Defendant Facebook to allow such access.  Plaintiff suffered annoyance and interference by the manipulation of her Facebook account by Defendants, is concerned about the privacy of her Facebook data, of which she is the owner, and has suffered injuries, damages, and losses by the unauthorized taking of her private data.

39.     Plaintiff Margaret Frankiewicz owned and was a user of her Facebook account during the 2016 presidential campaign season.  During the campaign season, Plaintiff Frankiewicz began experiencing an influx of political posts and advertisements Plaintiff had not experienced previously.  This interference included negative messaging about the candidate for whom by party affiliation Plaintiff would be likely to vote, even though her party affiliation was hidden from public view.  Plaintiff then selected the privacy setting not to see ads or posts like the disruptive ads and posts in the future.  Even with that setting, Plaintiff was inundated with similar ads and posts.  As a result, Plaintiff was dissuaded from voting in the 2016 presidential election.  Plaintiff did not consent to the access of her Personal Information by Defendants CA, SCL and GSR, and did not consent to Defendant Facebook to allow such access.  Plaintiff suffered annoyance and interference by

---

[26] *Id.*

[27] http://theaviationweek.net/2018/03/31/british-lawmakers-publish-evidence-from-cambridge-analytica.html.  Last accessed April 2, 2018

the manipulation of her Facebook account by Defendants, is concerned about the privacy of her Facebook data, of which she is the owner, and has suffered injuries, damages and losses by the unauthorized taking of her private data.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following class:

> All persons who own Facebook accounts in the United States and whose
> Personal Information was obtained by Defendants CA, SCL and/or GSR.

(referred herein as "Class Members.")

41.     Excluded from the Class are Defendants and any entities in which any Defendant or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees.  Also excluded from the Class are the judge assigned to this action, and any member of the judge's immediate family.

42.     **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class would be impracticable.  Plaintiffs reasonably believe that Class members number fifty (50) million people or more in the aggregate.  The names and addresses of Class Members are identifiable through documents maintained by Defendants.

43.     **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class Members, including, but not limited to:

      i.     Whether Facebook represented that it would safeguard Plaintiffs' and Class Members' Personal Information and not disclose it without consent;

      ii.    Whether CA, SCL and GSR improperly obtained Plaintiffs' and Class members' Personal Information without authorization or in excess of any authorization;

    iii.    Whether Facebook was aware of CA's, SCL's and GSR's improper collection of Plaintiffs' and Class Members' Personal Information;

    iv.    Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    v.    Whether Defendants breached a legal duty to Plaintiffs and the Class Members to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    vi.    Whether Class Members' Personal Information was obtained by CA;

    vii.    Whether Defendants' conduct violated Cal. Civ. Code § 1750, *et seq.*;

    viii.    Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

    ix.    Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

    x.    Whether Plaintiffs and the Class Members suffered annoyance and interference in the use of their Personal Information.

    xi.    Whether Plaintiffs and the Class Members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

    xii.    Whether Plaintiffs and the Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

    xiii.    Whether Defendants were unjustly enriched by the use of Plaintiffs' and Class Members' Personal Information.

44.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the Class.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

45.    **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, Plaintiffs and the other Class Members were injured through the substantially uniform misconduct by Defendants.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs.  The claims of Plaintiffs and those of other Class Members arise from the same operative facts and are based on the same legal theories.

46.    **Adequacy of Representation:** Plaintiffs are adequate representatives of the class, because their interests do not conflict with the interests of the other Class Members they seeks to represent; they have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

47.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action.  The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other members of the Class are relatively small when compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct.  Even if Class Members could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

48.    Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

49.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification, because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.     Whether Plaintiffs' and Class Members' Personal Information was obtained by CA, SCL, and GSR;

b.     Whether (and when) Facebook knew about the improper collection of Personal Information;

c.     Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

d.     Whether Facebook's representations that they would secure and not disclose without consent the Personal Information of Plaintiffs and members of the Class were facts that reasonable persons could be expected to rely upon when deciding whether to use Facebook's services;

e.     Whether Facebook misrepresented the safety of its many systems and services, specifically the security thereof, and their ability to safely store Plaintiffs' and Class Members' Personal Information;

f.     Whether Facebook failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

g.     Whether Defendants' acts, omissions, misrepresentations, and practices were and are likely to deceive consumers;

h.     Whether Defendants' conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*;

i.     Whether Defendants failed to adhere to their posted privacy policy concerning the care they would take to safeguard Plaintiffs' and Class Members' Personal Information in violation of California Business and Professions Code § 22576; and

j.      Whether Defendants negligently and materially failed to adhere to their posted

privacy policy with respect to the extent of their disclosure of users' data, in

violation of California Business and Professions Code § 22576.

## CLAIMS ALLEGED ON BEHALF OF ALL CLASS MEMBERS

### First Claim for Relief
**Violation of California's Unfair Competition Law ("UCL") – Unlawful Business
Practice - (Cal. Bus. & Prof. Code § 17200, *et seq.*)
All Defendants**

50.     Plaintiffs incorporate the substantive allegations above as if fully set forth

herein.

51.     By reason of the conduct alleged herein, Defendants engaged in unlawful

practices within the meaning of the UCL.  The conduct alleged herein is a "business practice"

within the meaning of the UCL.

52.     Facebook represented that it would not disclose users' Personal Information

without consent and/or notice.  It also required application developers, like CA, to obtain and

utilize users' Personal Information in specified, limited ways.

53.     Defendants failed to abide by these representations.  Facebook did not prevent

improper disclosure of Plaintiffs' and the Class Members' Personal Information.

54.     CA, managed and operated by SLC, obtained Plaintiffs' and the Class

Members' Personal Information using an application created by GSR either without

authorization or in excess of any authorization it—or its agents—may have obtained.

55.     Defendants' acts, omissions, and misrepresentations as alleged herein were

unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), Section 5(a) of the

Federal Trade Commission Act, 15 U.S.C. § 45(a), and Cal. Bus. & Prof. Code § 22576 (as a

result of Facebook failing to comply with its own posted policies).

56.     Plaintiffs and the Class Members suffered injury-in-fact and lost money or

property as the result of Defendants' unlawful business practices.  In particular, Plaintiffs'

and Class Members' Personal Information was taken and is in the hands of those who will

use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

57.     As a result of Defendants' unlawful business practices, Plaintiffs and the Class Members are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

**Second Claim for Relief**
**Violation of California's Unfair Competition Law ("UCL") –**
**Unfair Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq*.)**
**All Defendants**

58.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

59.     By reason of the conduct alleged herein, Defendants engaged in unfair "business practices" within the meaning of the UCL.

60.     Facebook stored the Personal Information of Plaintiffs and the Class Members in its electronic and consumer information databases.  Defendants represented to Plaintiffs and the Class Members that their Personal Information would remain private. Defendants engaged in unfair acts and business practices by representing that they would not disclose this Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

61.     Plaintiffs and the Class Members suffered injury-in-fact and lost money or property as the result of Defendants' unfair business practices.  In particular, Plaintiffs' and Class Members' Personal Information was taken by Defendants and is in the hands of those who have used it and will use it for their own advantage, or has been sold and is being sold for value, making it clear that the hacked information is of tangible value.

62.     As a result of Defendants' unfair business practices, violations of the UCL, Plaintiffs and the Class Members are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

**Third Claim for Relief**

**Violation of California's Unfair Competition Law ("UCL") –
Fraudulent Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq.*)
All Defendants**

63.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

64.     By reason of the conduct alleged herein, Defendants engaged in fraudulent business practices within the meaning of the UCL.

65.     Facebook stored the personal information of Plaintiffs and the Class Members in its electronic and consumer information databases.  Facebook falsely and knowingly represented to Plaintiffs and the Class Members that their personal information would remain private.  Facebook engaged in fraudulent business practices by representing that they would not disclose Plaintiffs' and Class Members' Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

66.     Facebook's statements that it would maintain the confidentiality of Plaintiffs' and Class Members' private information were false because Facebook knowingly and intentional provided that information to CA, SCL and GSR, which it used for its own advantage for commercial profit, without any permission or sufficient permission from Plaintiffs and Class Members.  Defendants CA, SCL and GSR knowingly and intentionally obtained and misused data obtained from Facebook in excess of any alleged authorizations granted to them, which authorization was based on its fraudulent misrepresentations, which CA, SCL and GSR used for their own advantage for commercial profit, without any permission or sufficient permission from Plaintiffs and Class Members

67.     Plaintiffs and Class Members suffered injury-in-fact and lost money or property as the proximate result of Defendants' unfair business practices.  In particular, Plaintiffs' and Class Members' Personal Information was taken and it is in the possession of those who have used and will use it for their own advantage, including financial advantage, or was and is being sold for value, making it clear that the stolen information has tangible value.

68.     Plaintiffs and the Class Members justifiably relied on the representations Facebook made in its privacy policy and elsewhere that it would not "share information we receive about you with others unless we have: received your permission [and] given you notice …"

69.     As a result of Defendants' fraudulent business practices and violations of the UCL, Plaintiffs and Class Members are entitled to restitution, disgorgement of profits and injunctive relief.

**<u>Fourth Claim for Relief</u>**
**Negligence – Facebook**

70.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

71.     Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining and protecting their Personal Information, and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

72.     Defendant knew that the Plaintiffs' and Class Members' Personal Information was valuable personal and sensitive information.

73.     By being entrusted by Plaintiffs and the Class Members to safeguard their Personal Information, Facebook had a special relationship with Plaintiffs and the Class Members.  Plaintiffs and Class Members signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect it, and would inform Plaintiffs and Class Members of any breaches or other security concerns that might call for action by Plaintiffs and Class Members.  Facebook did not.  Facebook failed to prevent CA's, SCL's, and GSR's improper obtaining of Plaintiffs' and the Class Members' Personal Information.

74.     Defendant breached its duty by failing to adopt, implement, and maintain adequate security measures to safeguard the Plaintiffs' and the Class Members' Personal Information, or by obtaining that Personal Information without authorization.  Defendant

negligently failed to verify the claims of CA, SCL, and GSR that they were using the data for scientific research.  Defendant negligently failed to investigate the data mining activities of CA, SCL, and GSR, and negligently failed to retrieve the Facebook data gathered by Defendants CA, SCL, and GSR and negligently failed to ensure that Defendants destroyed the stolen data.

75.     Facebook also breached their duty to timely disclose that Plaintiffs' and Class Members' Personal Information had been, or was reasonably believed to have been, improperly obtained.

76.     But for Defendant's wrongful and negligent breach of their duties owed to Plaintiffs and Class Members, their Personal Information would not have been improperly obtained.  Defendant's negligence was a direct and legal cause of the theft of the Personal Information of Plaintiffs and the Class Members and all damages resulting therefrom.

77.     The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class Members' Personal Information.

78.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

### Fifth Claim for Relief
### Intentional Misrepresentation - Facebook

79.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

80.     Defendant Facebook intentionally misrepresented the use and access to the data that Plaintiffs and Class Members owned on their Facebook sites.  Defendant Facebook

intentionally misrepresented that it would not disclose Plaintiffs' and the Class Members' Personal Information without authorization.

81.  Defendant Facebook intentionally misrepresented to the Plaintiffs and the Class Members the protection and privacy of their Facebook data as described in paragraphs 32 and 33 above, and in other means.  In addition, Defendant Facebook intentionally failed to disclose that information was available to data miners such as CA, SCL and GSR for profit with Plaintiffs' and the Class Members' permission.

82.  Defendant's representations were false, because Defendant Facebook knowingly and intentionally provided the Personal Information of Plaintiffs and Class Members to CA, SCL, and GSR, and did so for Facebook's financial and commercial advantage without either permission or sufficient information from Plaintiffs and Class Members.

83.  Facebook's representations were material to Plaintiffs' and Class Members' decision to post Personal Information on Facebook and the thisisyourdigitallife app.

84.  Plaintiffs and the Class Members justifiably relied on the representations Facebook made in their Privacy Policy and elsewhere on their website and acted in reliance on those representations by placing Personal Information in the thisisyourdigitallife app and on Facebook itself.

85.  Defendant Facebook new of the falsity of its representations, and its representations were made to deceive Plaintiffs and Class Members into providing Personal Information that could be used for its financial and marketing advantage.

86.  Defendant Facebook knew it did not have permission to allow CA, SCL, and GSR to disclose Personal Information because it did not attempt to obtain permission from Plaintiffs and the Class Members.

87.  Plaintiffs and the Class Members suffered injury-in-fact and lost property as a proximate result of Defendant Facebook's intentional misrepresentation.

Class Action Complaint

88.     As a direct and proximate result of Defendant Facebook's intentional

misrepresentation, Plaintiffs and Class Members suffered injuries, damages, losses or harm,

including but not limited to annoyance, interference, concern, lost time, the loss of personal

property, and the need for the cost of effective credit and privacy security, justifying an

award of compensatory and punitive damages.

### Sixth Claim for Relief
### Intentional Misrepresentation – Defendants CA, SCL and GSR

89.     Plaintiffs incorporate the substantive allegations above as if fully set forth

herein.

90.     Defendants CA, SCL, and GSR intentionally misrepresented the use and

access of the data that Plaintiffs and Class Members owned on their Facebook sites.

91.     Defendant CA, SCL, and GSR intentionally misrepresented that the data that

Class Members provided for the thisisyourdigitallife application was to be used for academic

research.  Defendant CA, SCL, and GSR intentionally withheld the information that the data

they collected from users would be used for their purposes for financial profit, intentionally

withheld that the data mined would be used for influencing political campaigns, and

intentionally withheld the information that use of the app would be a gateway to mining the

data of the users' Facebook Friends.

92.     Defendants' representations were false because Defendant CA, SCL, and GSR

knew that the use of the data was not for academic research, but instead its own commercial

and political advantage.  Defendants further knew that they did not have the consent of

owners of the Personal Information, Plaintiffs and Class Members, to use Plaintiffs' and

Class Members' Personal Information for commercial and political purposes.  Defendants

further knew that they did not have the consent of owners of the Personal Information,

Plaintiffs and Class Members, to use their Friends' data for any purposes.

93.     The intentional and false misrepresentations of CA, SCL, and GSR were material to Plaintiffs' and Class Members' decision to post Personal Information in the thisisyourdigitallife app.

94.     Plaintiffs and the Class Members justifiably relied on the representations CA, GSR and SCL made in encouraging users to use the thisisyourdigitallife app and acted in reliance on those representations by placing Personal Information in the thisisyourdigitallife app.

95.     Defendants CA, GSR, and SCL knew of the falsity of its representations, and its representations were made to deceive Plaintiffs and the Class Members into providing Personal Information that could be used for Defendants' financial and marketing advantage.

96.     Plaintiffs and the Class Members suffered injury-in-fact and lost property as a proximate result of Defendants CA's, SCL's, and GSR's intentional misrepresentation.

97.     As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

### Seventh Claim for Relief
### Unjust Enrichment – All Defendants

98.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

99.     Defendants have received and retained moneys by using and marketing Personal Information owned by Plaintiffs and Class Members without their consent. Defendants thus profited by the taking of the property of Plaintiffs and Class Members without compensating Plaintiffs and Class Members.

100.    Defendants have thus received a benefit at the expense of Plaintiffs and Class Members, and not by mistake but by intentional conduct.  It would be unconscionable and contrary to equity for Defendants to retain that benefit.

101.    The Court should award as a remedy the monies obtained by Defendants as a result of the use of Plaintiffs' and Class Members' property (their Personal Information), and the reasonable value of that property.

**Eighth Claim for Relief**
**Invasion of Right of Privacy – All Defendants**

102.    Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

103.    Article 1, Section 1 of the California Constitution expressly provides a right to privacy.  This right is enforced through the tort of the invasion of privacy.

104.    Facebook's terms of service provide that its users' Personal Information would not be released to third parties without permission and notice.

105.    Facebook's users reasonably believed that they would communicate with their family and friends through Facebook without their Personal Information being released to third parties without permission or notice.

106.    Plaintiffs and Class Members have an interest in preventing the unauthorized disclosure and/or misuse of their Personal Information and in conducting their personal activities without intrusion or interference.  This includes the right not to have their Personal Information stolen and used by Defendants CA, SCL, and GSR and others for others' benefit.

107.    Defendants intentionally intruded on Plaintiffs' and Class Members' private place, conversation, matter, seclusion, solitude and relationships and otherwise invaded their right to privacy without consent and permission.

108.    Defendants' intrusive conduct was and is highly objectionable to reasonable persons and constitutes an egregious intrusion on Plaintiffs' and Class Members' rights to privacy.

109.    Plaintiffs and Class Members were harmed by Defendants' invasion of their rights to privacy.

110.    As a direct and proximate result of Defendants' invasion of Plaintiffs' and Class Members' privacy, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

**<u>Ninth Claim for Relief</u>**
**Violations of the Stored Communications Act**
**18 U.S.C. §§ 2701, et seq. – All Defendants**

111.    Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

112.    By unlawfully accessing and disclosing, and or divulging the content of Plaintiffs' and Class Members' communications to third parties, Defendants violated the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*

113.    The Stored Communications Act ("SCA") defines electronic storage as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

114.    The servers Defendants used to provide electronic communications service to Plaintiffs and Class Members are a "facility" within the meaning of the SCA.

115.    Defendants are "persons" within the meaning of the SCA.

116.    Defendants' provision of Plaintiffs' and Class Members' personal data with third parties exceeded authorization from any party to the personal data at issue.

117.    Defendants' sharing of personal data resulted in and constitutes interstate data transmissions in violation of the SCA.

Class Action Complaint

118.     As a direct and proximate result of Defendants' violations of the SCA, pursuant to 18 U.S.C § 2707(c), Plaintiffs and Class Members are entitled to 1) minimum statutory damages of $100 per person; 2) punitive damages, costs, and 3) reasonable attorney fees.

**Tenth Claim for Relief**
**Conversion –All Defendants**

119.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

120.     As Facebook's terms of service admit, Plaintiffs and Class Members were the owners and possessors of private data in the form of their Personal Information.  As a result of their wrongful conduct, Defendants have interfered with the Plaintiffs' and Class Members' right of possession and control of such property and taken that property for their own use, property to which Plaintiffs and Class Members had a superior right of possession and control at the time of conversion.

121.     In converting Plaintiffs' and Class Members' Private Information Defendants acted with malice, oppression, and in conscious disregard of the rights of Plaintiffs and Class Members.

122.     As a direct and proximate result of Defendants' conversion of Plaintiffs' and Class Members' property, Plaintiffs and Class Members suffered injuries, damages, losses or harm, including but not limited to annoyance, interference, concern, lost time, the loss of personal property, and the need for the cost of effective credit and privacy security, justifying an award of compensatory and punitive damages.

**Eleventh Claim for Relief**
**Civil Conspiracy –All Defendants**

123.     Plaintiffs incorporate the substantive allegations above as if fully set forth herein.

25

Class Action Complaint

124.     As described above, Defendants knew or had reason to know that Plaintiffs'
and Class Members' Personal Information was being used in violation of the terms of
Facebook's agreement with Plaintiffs and Class Members.

125.     Defendants knew that invasive misuse of Personal Information was occurring.

126.     The acts and evidence identified in this complaint and elsewhere evidence
cooperation and agreement among the Defendants.

127.     Defendants acted with a common plan or design and in furtherance of a direct
conspiracy to wrongfully use Plaintiffs' and Class Members' Personal Information for profit,
to violate the UCL and the SCA, to commit conversion, to invade Plaintiffs' and Class
Members' privacy and to commit such action knowingly and without authorization.

128.     As a direct and proximate result of Defendants' active participation in a
common plan or design to convert and misuse Plaintiffs' and Class Members' property,
Plaintiffs and Class Members suffered injury, damage, loss or harm, including but not limited
to annoyance, interference, concern, lost time, the loss of personal property, and the need for
the cost of effective credit and privacy security, justifying an award of compensatory and
punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members,
respectfully request that this Court enter an Order:

(a)     Certifying the Class and appointing Plaintiffs as Class Representatives and
their counsel as counsel for the class;

(b)     Finding that Defendants' conduct was negligent, fraudulent, deceptive, unfair,
and unlawful as alleged herein;

(c)     Enjoining Defendants from engaging in further negligent, deceptive, unfair,
and unlawful business practices alleged herein;

(d)     Awarding Plaintiffs and the Class Members nominal, actual, compensatory,
and consequential and punitive damages;

(e)     Awarding Plaintiffs and the Class Members statutory damages and penalties, as allowed by law;

(f)     Awarding Plaintiffs and the Class Members restitution and disgorgement;

(g)     Awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest;

(h)     Awarding Plaintiffs and the Class Members reasonable attorneys' fees costs and expenses; and

(i)     Granting such other relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: April 2, 2018

/s/ *Joshua H. Watson*
Joshua H. Watson

*Attorney for Plaintiffs and the Class*

Class Action Complaint